**Angie Clark COBLE, Appellant–Plaintiff,**

v.

**JOSEPH MOTORS, INC.,
Appellee–Defendant.**

**No. 91A02–9707–CV–415.**

Court of Appeals of Indiana.

April 29, 1998.

130

Courtney B. Justice, Delphi, for Appellant–Plaintiff.

Philip E. Kalamaros, Edward N. Kalamaros & Associates, Professional Corporation, South Bend, for Appellee–Defendant.

## OPINION

GARRARD, Judge.

### Case Summary

Angie Clark Coble ("Coble") appeals the trial court's order granting a motion to dismiss part of Coble's complaint and granting summary judgment in favor of Joseph Motors, Inc. ("Joseph Motors") on the remaining portion of her complaint. We affirm.

## Issues

Coble presents three issues which we consolidate and rephrase as follows:

I.  Whether the trial court properly dismissed the physical injury claim for want of subject matter jurisdiction; and,

II. Whether Coble's intentional infliction of emotional distress claim was appropriately disposed of through summary judgment.

## Facts [1] and Procedural History

On February 7, 1995, while working at her job for Joseph Motors, Coble accidentally severed the tip of her left index finger in a press machine she was operating. She immediately walked to the rest room, wrapped a paper towel around her injury, and went to a meeting room. An ambulance transported her to a hospital where she was treated and released.

Meanwhile, back at Joseph Motors, maintenance worker Jimmie Scott ("Scott") cleaned the machine which Coble had been using and found her fingernail and a small amount of her finger in it. Scott was told that because they were not needed, they could be disposed of in a red plastic biohazard bag, which in turn could be put into a hazardous wastebasket. However, the next morning the red bag containing Coble's fingertip found its way to the desk of human resources manager, Joe Dold ("Dold").

Coble testified that six days after her accident, she returned to Joseph Motors to submit a doctor's note requiring that she be off work for two weeks. She claims that Dold's assistant told her that Dold wished to see her in his office. There, they discussed her injury. Coble claims to remember Dold pointing to a blue bag which she thought contained her fingertip, and chuckling that he should get rid of it. He does not remember saying such a thing.

Later in February, Dold held a safety meeting for group leaders. At the meeting, Dold reviewed the accidents which had occurred at Joseph Motors within the previous month, and attempted to institute preventative measures. Although he did not have the bag with him, Dold commented that he had a girl's finger in his office. After the meeting, Dold brought the bag from his office, emptied it, and displayed its contents to four or five people.

On September 19, 1995, Coble filed a "Complaint for damages for intentional infliction of emotional distress and outrageous conduct." Record at 9. The complaint alleged, *inter alia*:

7) Six days after her injury, ... Coble saw her severed finger in a blue plastic bag in the office of ... Dold, who had placed her severed finger permanently on public display in his office as an exercise in "company safety," and boasted at company safety meetings "Right now I've got a girl's finger in a bag in my office."

8) ... Dold has admitted his conduct to Joseph Motors' employees, that in fact he did deliberately keep her fingertip for two weeks in his office and referred to it at safety meetings.

9) Joseph Motors' outrageous and intentional misconduct constitutes an independent tort, wholly outside the provisions of the Indiana Worker's Compensation Act, was neither an accident, nor did it occur in the course of her employment, and consists of intentional infliction of emotional distress, bad faith and outrageous conduct, beyond all bounds of decency.

10) Joseph Motors' act, in publicly humiliating ... Coble by using her own body part to publicize and warn of the need for future company safety measures was atrocious and utterly intolerable in a civilized community.

11) Joseph Motors' supervisors intended their acts would cause public humiliation and emotional distress to [Coble]; knew

---

1. In reference to Coble's twenty-two pages of facts, we emphasize that the statement of facts is to be a concise narrative of the facts, not an argumentative summary of each witness's testimony. *Fuller v. Allison Gas Turbine Div., Gener-* *al Motors Corp.,* 670 N.E.2d 64, 66 n. 2 (Ind.Ct. App.1996); Ind. Appellate Rule 8.3(A)(5). While noncompliance with the Rules of Appellate Procedure is a basis for dismissal of an appeal, we have chosen to reach the merits of this case.

that their acts were substantially certain to cause her public humiliation; would invade her privacy and knew they were committing outrageous acts against her.

WHEREFORE, ... Coble demands compensatory and punitive damages against Joseph Motors, Inc. in an amount sufficient to compensate her for defendant's outrageous, intentional infliction of emotional distress, for her costs and for all other relief in the premises, and to set a public example of defendant to discourage such misconduct in the future.

Record at 9–10. Joseph Motors filed an answer and affirmative defenses, and later filed a motion to dismiss and a motion for summary judgment.

The trial judge dismissed Coble's physical injury claim for lack of subject matter jurisdiction based upon the exclusivity provision of the Worker's Compensation Act. As for the non-physical injury claim, the trial court's order provided:

5. [Joseph Motors'] Motion for Summary Judgment as to Plaintiff/Employee's Complaint against Defendant/Employer for damages based on non-physical injuries as a result of the allegations of intentional infliction of emotional distress is hereby granted. The facts and law are with the Defendant and against the Plaintiff. Considering the facts as most favorable to the Plaintiff, the Court finds there are not genuine issues of material fact and the Defendant is entitled to judgment as a matter of law. The Plaintiff has not presented facts in the designation of evidence on Summary Judgment to support Plaintiff/Employee's tort claim against Defendant/Employer for intentional infliction of emotional distress. There are no facts or reasonable inferences therefrom presented to support the requirement that the Defendant/Employer intended injury. There are no facts or reasonable inferences therefrom presented to support the requirement

that any tortious intent on the part of employer's representative, Joseph Dold, can be imputed to the Defendant/Employer. There are no facts or reasonable inferences therefrom presented to support Plaintiff's argument as part of Plaintiff's Claim that the alleged tort feasor manager, Joseph Dold, acted pursuant to policy or decision made through employer corporation's regular decision making channels and that the injury to the employee was the intended product of such policy or decision. Taking the evidence designated which is most favorable to the Plaintiff/Employee, that being the allegations that the Defendant's manager after the accident held up what was alleged to be Plaintiff/Employee's partial fingertip in a bag at a safety meeting and that Defendant's manager made a statement to the Plaintiff/Employee about whether "it hurts", even such evidence does not support Plaintiff's theory that the tort feasor acted pursuant to policy or decision made through Employer Corporation's regular decision making channels by those in authority to do so and that injury to employee was the intended product of any such policy or decision. Based upon the evidence and reasonable inferences, there is nothing in the record to establish that the Defendant/Employer, as a corporate entity, as distinguished from its manager, intended to injure the Plaintiff/Employee.

Record at 74–75.[2]

Coble briefly argues that the trial court should not have dismissed her common law claim based upon the exclusivity provision of the Worker's Compensation Act. However, the trial court did not dismiss all of her claims in this manner. Rather, as the following excerpt from the trial court's order demonstrates, only her claim for physical injury was dismissed for lack of subject matter jurisdiction:

---

**2.** Coble's response to Joseph Motors' motion to dismiss and for summary judgment alleged a conversion claim. However, because conversion was not raised in the original complaint or on appeal, nor was it dealt with in the trial court's order, we will not address it. Moreover, the invasion of privacy claim which Coble attempts

to assert on appeal was not argued in her response to Joseph Motors' motion to dismiss and for summary judgment, nor was it discussed at the dismissal/summary judgment hearing or dealt with in the trial court's order. As such, we do not address it either.

4. [Joseph Motors'] Motion to Dismiss, pursuant to Trial Rule 12(B)(1), *certain portions* of [Coble's] Complaint for lack of subject matter jurisdiction, is granted. The Plaintiff/Employee cannot sue the Defendant/Employer for damages based upon physical injuries sustained in this case by an on-the-job accident. *To the extent [Coble's] claim against [Joseph Motors] is for physical injuries as a result of the on-the-job accident, [Coble's] Complaint is dismissed pursuant to Trial Rule 12(B)(1).* The court lacks subject matter jurisdiction due to the exclusionary provisions of the Worker's Compensation Act.

Record at 74. Her other claims were dealt with via summary judgment.

To the extent Coble now asserts on appeal that she never presented any physical injury claim in her complaint, we disagree. Her complaint contained the following allegations:

3) An ambulance took [Coble] to the White County Memorial Hospital emergency room, but defendant failed to send the severed end of her left index finger, preventing physicians at the emergency room from reattaching the severed end of [Coble's] left index finger.

* * * * * *

6) Joseph Motors' action in failing to send [Coble's] severed fingertip with her to the White County Memorial Hospital caused her permanent loss of 10% of her left index finger.

Record at 9. Thus, Joseph Motors and the trial court reasonably concluded that a claim for physical injury had been asserted. If indeed Coble did not mean to assert any physical injury claim, then no harm occurred with the dismissal of a nonexistent claim.

## II. Summary Judgment

Coble next contends:

Resolving all facts and inferences in Coble's favor, a jury question is presented as to whether Joseph Dold was acting pursuant to Joseph Motors, Inc.'s harsh, aggressive policy when he displayed Coble's finger to team leaders at an official meeting to promote company policy; and whether

Coble's injury was the reasonably certain intended product of that company policy. Coble's brief at 36. Moreover, she argues that by awarding Dold a raise after learning of his display of Coble's fingertip "and benefitting from Dold's aggression and harshness on safety, Joseph Motors ratified that act." Coble's brief at 38.

■ In response, Joseph Motors first argues that non-physical injuries are covered under the Worker's Compensation Act. As for the comments in *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1288–89 (Ind. 1994) to the contrary, Joseph Motors contends they are dicta, and inconsistent with the Act and with other reported cases. We disagree.

Our supreme court determined that because the injuries at the heart of Perry's complaint were not physical, nor was there any impairment or disability as those terms are comprehended by the Worker's Compensation Act, he was entitled to maintain his action. As in *Perry*, the heart of Coble's claim to the trial court was not physical. Any impairment or disability had already been disposed of in an earlier settlement. Thus, upon the holding in *Perry*, we conclude that Coble was entitled to maintain her civil tort action to recover for the injury allegedly done her that did not constitute personal injury within the meaning of the Worker's Compensation Act. That is, the trial court was not deprived of jurisdiction of her case on this ground. *See also Landis v. Landis*, 664 N.E.2d 754, 755–56 (Ind.Ct.App.1996) (concluding that trial court had jurisdiction to award employee damages for intentional infliction of emotional distress after she disclaimed recovery for physical injuries, medical expense, or any impairment or disability defined by the Worker's Compensation Act), *trans. denied.* Whether summary judgment was appropriately granted is a separate inquiry.

■ Upon review of the grant or denial of a summary judgment motion, we apply the same legal standard as the trial court: summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C);

*North Snow Bay, Inc. v. Hamilton,* 657 N.E.2d 420, 422 (Ind.Ct.App.1995). We may not search the entire record to support the judgment, but may only consider that evidence which has been specifically designated to the trial court. *Id.* The party appealing the trial court's grant or denial of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *Id.*

Our supreme court recently held that the Worker's Compensation Act does not include employers' intentional torts within its coverage. *Baker v. Westinghouse Elec. Corp.,* 637 N.E.2d 1271, 1273 (Ind.1994). Rather,

> ... the exclusivity provision is expressly limited to personal injury or death arising out of and in the course of employment which occurs "by accident." Because we believe an injury occurs "by accident" only when it is intended by neither the employee nor the employer, the intentional torts of an employer are necessarily beyond the pale of the act.

*Id.* The *Baker* court then examined the level of intent required and the question of who must intend:

> "[M]ere" employer negligence or recklessness is not sufficient to strip the Worker's Compensation Board of jurisdiction and instead vest jurisdiction in a court of law. The employer that acts in the belief that it is causing an appreciable risk of harm to another may be negligent, and if the risk is great its conduct may be characterized as reckless or wanton, but it is not an intentional wrong.... [W]e agree that nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice.
>
> *       *       *       *       *       *
>
> [T]he logic that supports holding an employer liable for directing or expressly authorizing torts against its employees does not compel the same result when the intentional tort is committed by a foreman or supervisor and not by the employer itself.... Accordingly, it must be the em-

ployer who harbors the intent and not merely a supervisor, manager or foreman. *Id.* at 1275.

■ "Inasmuch as the intentions of co-workers and third parties play no part in this consideration, many intentionally inflicted injuries must be deemed 'by accident' under the act." *Perry,* 637 N.E.2d at 1287.

> Tortious intent will be imputed to an employer that is a legal entity or artificial person where either (1) the corporation is the tortfeasor's alter ego or (2) the corporation has substituted its will for that of the individual who committed the tortious acts. To prevail on the alter ego theory, the employee must show that both ownership and control of the corporation are in the tortfeasor's hands. ... [A] corporation is chargeable with tortious intent when the individual who committed the tortious act was acting pursuant to a policy or decision made through the corporation's regular decision-making channels by those with authority to do so. Because the requisite level of intentionality must also exist, injury to the employee must be shown to have been the intended product of the policy or decision at issue if the proponent of jurisdiction is to prevail.

*Id.* (citations omitted). In short, the tort must have been committed by the employer (or by his alter ego), and the employer must also have intended the injury or actually known that injury was certain to occur. *Foshee v. Shoney's, Inc.,* 637 N.E.2d 1277, 1281 (Ind.1994). Where both these requirements are met, the compensation act does not bar an action at law.

■ The question remains whether the materials designated to the court were sufficient to establish a genuine factual issue that could result in liability. Joseph Motors did not commit the tort. Rather, it was Dold who displayed the tip of Coble's finger. Dold is not and has never been an owner or controller of Joseph Motors. Thus, the alter ego theory does not apply. Joseph Motors did not intend to injure, humiliate, or embarrass Coble in any way, nor did the Joseph brothers actually know that injury was certain to occur. Similarly, Dold did not intend to injure Coble nor did he actually know that

injury was certain to occur. His behavior may have been reckless, negligent or wanton, but it was not intended to hurt Coble. Even if Dold had intended to hurt Coble, his intent could not have been imputed to Joseph Motors.

Dold did not set policy at Joseph Motors, although he attempted to carry out corporate policies promulgated by the Joseph brothers. When he showed Coble's finger, Dold was not acting pursuant to a policy or decision made through the corporation's regular decision-making channels by those with authority to do so. The Joseph brothers did not directly or indirectly instruct Dold to display Coble's fingertip or injure her in any way. It was not Joseph Motors' policy to embarrass or humiliate those who had been injured at work in an effort to prevent future mishaps. Thus, Coble's efforts to establish her claim within the intentional injury exception to the exclusivity of the Compensation Act fail.

We are also unconvinced that any genuine issue exists to establish that Joseph Motors ratified Dold's actions by granting him a raise. Coble has not established any link between the incident involving Coble's fingertip and the annual raise received by Dold. To the contrary, rather than endorsing Dold's behavior, Joseph Motors apparently considered that incident as one of the precipitating factors leading to Dold's termination.

In summary, Coble has failed to establish a genuine issue of fact that intentional infliction of emotional distress was committed by Joseph Motors or by its alter ego, or that Joseph Motors intended her injury or actually knew that it was certain to occur. Accordingly, summary judgment was proper.

Affirmed.

SHARPNACK and DARDEN, JJ., concur.